IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ELAINE ENGELHARDT,                          6:12-CV-00668-BR

            Plaintiff,                      OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

            Defendant.


RICHARD F. MCGINTY
McGinty & Beecher
P.O. Box 12806
Salem, OR 97301

            Attorneys for Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 SW. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORATO**
Regional Chief Counsel
**WILLY M. LE**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2860

        Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Elaine Englehart seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's application

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act.  This Court has jurisdiction to review the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision

of the Commissioner and **REMANDS** this matter pursuant to sentence

four of 42 U.S.C. § 405(g) for further administrative proceedings

consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed her application for DIB on September 25, 2008, and alleged a disability onset date of July 1, 2008.  Tr. 114, 144.[2]  The application was denied initially and on reconsideration.  Tr. 75, 82.  An Administrative Law Judge (ALJ) held a hearing on November 3, 2010.  Tr. 11.  At the hearing Plaintiff was represented by an attorney.  Tr. 49. Plaintiff and a vocational expert (VE) testified at the hearing. Tr. 31-65, 67-71.

The ALJ issued a decision on January 21, 2011, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 8.  Pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1.

## BACKGROUND

Plaintiff was 41 years old at the time of the hearing. Tr. 114.  She speaks English and received her GED in 1990. Tr. 134.  She has past relevant work experience as a retail clerk.  Tr. 129.

Plaintiff alleges disability due to the consequences of

---

[2] Citations to the official transcript of record filed by the Commissioner on November 26, 2012, are referred to as "Tr."

3 - OPINION AND ORDER

strokes and blood clots.   Tr. 129.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.   After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence except as noted below.   *See* Tr. 14-20.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.   *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).   To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.   *Macleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *May v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g).   *See also Brews v. Comm'r*, 682 F.3d 1157, 1161 (9th Cir. 2012).   Substantial evidence is "relevant evidence that

a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically \severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her application date. Tr. 13.

At Step Two the ALJ found Plaintiff has the following severe impairments: deep-vein thrombosis, obesity, pain disorder, protein deficiency, gastrointestinal bleeding, diabetes mellitus,

hernia, somatoform disorder, depression, and personality disorder.  Tr. 13.

At Step Three the ALJ concluded Plaintiff's impairments do not medically equal the criteria for Listed Impairments under §§ 404.1520(d), 404.1525, and 404.1526 of 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 14.  The ALJ found Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she "is limited to frequent balancing, stooping, kneeling, and climbing of ramps and stairs; occasional crouching, crawling and climbing of ladders, ropes, and scaffolds; no more than frequent exposure to extreme temperatures of cold and head; and no exposure to moving or hazardous machinery or unprotected heights."  Tr. 15.  She is also limited to simple, routine, repetitive tasks no greater than a Reasoning Level 2 as defined in the Dictionary of Occupational Titles (DOT).[3]  Tr. 15.

At Step Four the ALJ concluded Plaintiff is incapable of performing her past relevant work as a retail clerk.  Tr. 17-18.

At Step Five the ALJ concluded Plaintiff is capable of performing jobs that exist in significant numbers in the national economy, including eye-glass polisher, film touch-up inspector,

---

[3] The DOT defines Reasoning Level 2 as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."  Dictionary of Occupational Titles App'x C (4th ed. 1991 (available at 1991 WL 688702).

counter clerk, and bench assembler.  Tr. 21.  Accordingly, the
ALJ found Plaintiff not disabled.  *Id.*

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to
properly consider her somatoform disorder when evaluating her
testimony and her RFC, (2) improperly rejected the opinion of
Gilbert Nyamuswa, M.D., and (3) improperly omitted Plaintiff's
limitations set out in the opinion of Steven Goldstein, Ed.D.,
when evaluating Plaintiff's RFC.  For the reasons that follow,
the Court finds the ALJ improperly failed to incorporate the
intellectual limitations assessed by Dr. Goldstein into the RFC,
and the Court remands this case for further administrative
proceedings consistent with this Opinion and Order.

**I.    The ALJ's failure to properly consider Plaintiff's
       somatoform disorder was harmless error.**

Plaintiff alleges the ALJ erred in his credibility
determination of Plaintiff's testimony and in his evaluation of
her RFC when he failed to properly consider her somatoform
disorder.

**1.  Plaintiff's Credibility.**

In *Cotton v. Bowen* the Ninth Circuit established two
requirements for a claimant to present credible symptom

testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

In her Disability Report, Plaintiff stated she had difficulties walking, standing, bending, and thinking because of "brain strokes" and blood clots in her left leg.  Tr. 128.  At the hearing she testified she has to use the bathroom "three or four times" per day, which was the "biggest problem" that prevented her from working.  Tr. 41.  She attributed her frequent trips to the bathroom to "GI bleed."  Tr. 41-42.  Plaintiff also

stated she could not work because her strokes caused her to have a poor memory. Tr. 128.

As noted, because there was not any evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *See Parra*, 481 F.3d at 750. The ALJ found the medical record did not substantiate that Plaintiff experienced consistent episodes of GI bleeding based in part on treatment notes from December 2009 that do not reflect any "significant complaints" of bleeding. The ALJ also concluded Plaintiff's allegations of poor memory were belied by the record, and the ALJ noted a consultative examination with Rito Maningo, M.D., revealed Plaintiff "understood and followed instructions well and her memory and ability to concentrate were intact." Tr. 229-34. Thus, there is substantial medical evidence in the record that conflicts with Plaintiff's testimony regarding her limitations.

Conflict between a claimant's testimony and the objective medical evidence generally constitutes a clear and convincing reason for rejecting a claimant's testimony. Here, however, Plaintiff was adjudged to suffer from somatoform disorder. Tr. 13. According to the *Diagnostic and Statistical Manual of Mental Disorders IV* (4th ed. 2000)(DSM-IV) at 485, somatoform disorder is characterized by "the presence of physical symptoms that suggest a general medical condition . . . *and are not fully*

*explained by a general medical condition*."  Emphasis added.
Thus, because the ALJ recognized Plaintiff's somatoform disorder
as a "severe impairment," Tr. 13, the lack of objective medical
evidence in support of Plaintiff's medical complaints does not
constitute a clear and convincing reason for finding Plaintiff's
testimony not credible.

The ALJ's error in this respect, however, must be viewed in
the context of the additional reasons that he provided for
finding Plaintiff's testimony not credible.  Although Plaintiff
complained of a history of diarrhea for the past four years, the
ALJ noted Plaintiff had worked for two of those four years, which
the ALJ concluded was an indication that Plaintiff is capable of
working despite any limitations related to her frequent need to
use the bathroom.  Tr. 16.  The ALJ also considered Plaintiff's
daily activities in making his credibility finding and found them
to suggest greater mental and physical functioning than Plaintiff
claimed.  Tr. 240-41, 433.  For example, Plaintiff reported her
activities included cooking, cleaning house, doing laundry, and
helping her husband in managing their finances.  Incongruence
between a claimant's testimony and her activities of daily living
is a clear and convincing reason for discrediting a claimant's
testimony.  *See Molina*, 674 F.3d at 1113 (activities of daily
living may discredit claimant to the extent they are inconsistent
with the impairment alleged).  The ALJ also pointed out that

12 - OPINION AND ORDER

Plaintiff was employed until she relocated from Florida, which was immediately prior to her alleged onset date.[4]  The fact that a claimant stopped working for reasons other than her impairments is also an appropriate basis for disregarding her testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)(rejection of claimant's testimony was proper when based in part on the fact that claimant left his job because he was laid off rather than because he was injured).  Thus, the record supports the Court's conclusion that the ALJ reasonably inferred Plaintiff's cessation in employment was causally related to her relocation from Florida rather than her alleged disability.

In summary, although the Court concludes the ALJ erred when he failed to consider Plaintiff's somatoform disorder in his credibility assessment of Plaintiff's testimony, that error is harmless because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for finding Plaintiff's testimony not credible.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)(an error is harmless as long as there is substantial evidence in the record to support the ALJ's decision).

---

[4] By contrast, Plaintiff testified she stopped working at her job as a retail clerk because she "went to the hospital." Tr. 39.

13 - OPINION AND ORDER

**B.  Plaintiff's RFC**.

Plaintiff also contends the ALJ erred when he failed to "include [in Plaintiff's RFC] any functional limitations related to the symptoms from Claimant's somatoform disorder, *i.e*. those symptoms described by Claimant that the ALJ dismissed by finding Claimant not fully credible."  Pl.'s Br. at 14.  As noted, the ALJ properly rejected Plaintiff's testimony as not credible based on the inconsistency between her activities of daily living and her subjective complaints in addition to the fact that her alleged onset date appeared to be determined by a relocation rather than Plaintiff's disability.  The ALJ is not required to incorporate limitations into the RFC that are not supported by substantial evidence in the record.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-66 (9th Cir. 2001).  Moreover, Plaintiff does not cite any evidence that the limitations rejected by the ALJ as not credible were attributable to her somatoform disorder.  *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)(the claimant bears the burden of proving that her impairment is disabling and, thus, the mere existence of an impairment is insufficient proof of disability).

On this record the Court concludes the ALJ did not err when he did not incorporate Plaintiff's discredited limitations into his assessment of Plaintiff's RFC because he provided legally

sufficient reasons for doing so.

## II. The ALJ provided specific, legitimate reasons for rejecting the opinion of Dr. Nyamuswa.

Plaintiff contends the ALJ improperly rejected the opinion of treating physician Dr. Nyamuswa. An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Lester*, 81 F.3d at 830–32.

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.* A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r*, 169 F.3d 595,

600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

Dr. Nyamuswa's treatment records reveal he treated Plaintiff from September 8, 2008, to March 31, 2009.  He opined Plaintiff is completely medically disabled due to status post-stroke syndrome, hypercoagulability secondary to protein C deficiency, and mesenteric ischemia.  Tr. 274.  The ALJ accorded "little weight" to Dr. Nyamuswa's opinion because it was contradicted by Dr. Nyamuswa's own findings as well as other medical evidence in the record.  Tr. 19.

Instead, in his evaluation of the medical evidence, the ALJ credited the opinion of examining physician Dr. Maningo, who noted in 2008 that Plaintiff did not have any difficulty getting on and off the examination table, tandem walking, squatting, or rising.  Tr. 230-33.  Dr. Maningo observed Plaintiff had a normal gait, normal weight-bearing, and normal posture.  Tr. 230-33.  Thus, Dr. Maningo contradicts Dr. Nyamuswa's opinion as to Plaintiff's physical limitations.  The ALJ gave significant weight to Dr. Maningo's opinion, which Plaintiff does not specifically challenge.  Tr. 18-19.

Because the ALJ gave little weight to Dr. Nyamuswa's opinion on the basis that Dr. Nyamuswa's opinion was contradicted by other medical evidence in the record and the ALJ gave greater

16 - OPINION AND ORDER

weight to examining physician Dr. Maningo's opinion and other
medical evidence, the ALJ was required to provide specific and
legitimate reasons for discounting Dr. Nyamuswa's opinion. *See
Lingenfelter*, 504 F.3d at 1042.  In rejecting Dr. Nyamuswa's
opinion, the ALJ identified contradictions between Dr. Nyamuswa's
opinion and his medical findings.  *See Tommasetti v. Astrue*,
533 F.3d 1035, 1040 (9th Cir. 2008)(specific, legitimate reasons
for rejecting a physician's opinion may include inconsistency
with medical records).  Specifically, Dr. Nyamuswa's treatment
records included his findings that Plaintiff had normal blood
pressure, clear heart sounds, full orientation, and normal neck
movement.  Tr. 274-76.  The ALJ pointed out that these
observations were inconsistent with Dr. Nyamuswa's opinion as to
the nature and extent of Plaintiff's physical limitations.
Thus, the Court concludes the ALJ provided legally sufficient
reasons for rejecting Dr. Nyamuswa's opinion.

    According to Plaintiff, the ALJ inappropriately assessed the
opinion of Dr. Nyamuswa in relation to his own medical findings.
The Court disagrees.  Assessing contradictions between a
physician's opinion and his objective findings, however, is a
"permissible determination within the ALJ's province." *Bayliss
v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Thus, the ALJ
did not err when he identified inconsistencies within Dr.
Nyamuswa's treatment notes were material.  *See Morgan*, 169 F.3d

at 601.  The Court, therefore, finds the ALJ provided legally sufficient reasons for rejecting Dr. Nyamuswa's opinion.

In any event, the Commissioner concedes the ALJ erred with respect to other reasons for rejecting Dr. Nyamuswa's opinion. In the Ninth Circuit such error is harmless when it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (internal citations omitted).  Because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for rejecting Dr. Nyamuswa's opinion, the Court will not disturb the ALJ's determination.  *See Carmickle*, 533 F.3d at 1162.

### III. The ALJ erred when he failed to incorporate into his evaluation of Plaintiff's RFC the opinion of Dr. Goldstein as to Plaintiff's limitations.

Plaintiff contends the ALJ failed to incorporate the opinion of consultative psychological examiner Dr. Goldstein into the ALJ's evaluation of Plaintiff's RFC and, therefore, the ALJ improperly rejected Dr. Goldstein's opinion.  Pl.'s Br. at 10-11.

On December 18, 2008, Dr. Goldstein met with Plaintiff to conduct a psychological evaluation.  Tr. 235.  He administered an Extended Mental Status Examination and a Bender Gestalt test. Tr. 236.  Dr. Goldstein opined Plaintiff is limited to performing occupations allowing her to ". . . understand, remember, and carry out one to two step instructions . . . [and to] maintain

concentration and attention sufficient to carry out one to two step instructions." Tr. 241.

Although the ALJ accorded "significant weight" to Dr. Goldstein's opinion, Tr. 19, the ALJ did not incorporate a "one to two step" functional limitation into his assessment of Plaintiff's RFC. According to the DOT, occupations requiring an individual to apply "simple one- or two-step instructions" have a reasoning development level of one (R1). *DOT*, App'x C at 1013. By contrast the ALJ limited Plaintiff to performance of reasoning development level two (R2) occupations in his assessment of Plaintiff's RFC. Tr. 15.

The Commissioner, nevertheless, argues the ALJ's RFC assessment was proper because Dr. Goldstein "did not identify any limitations on Plaintiff's ability to follow instructions." Def.'s Br. at 10. The Court disagrees. Dr. Goldstein clearly identified a level of intellectual functioning consistent with the R1 level. By implication, therefore, Dr. Goldstein's functional assessment of Plaintiff at the R1 level excludes the higher level R2 intellectual functioning.

The Court notes the ALJ is permitted to exclude limitations from the RFC if they are "properly discounted" or unsupported by substantial evidence. *See Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004). *See also Osenbrock v. Apfel*, 240 F.3d 1157,

1164-66 (9th Cir. 2001).  The ALJ, however, did not make any such findings with respect to Dr. Goldstein's opinion, and, in fact, the ALJ assigned significant weight to Dr. Goldstein's opinion.

On this record the Court concludes the ALJ erred when he failed to incorporate into his RFC assessment the limitations of Plaintiff as set out in Dr. Goldstein's opinion.


## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a

> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required to
> find the claimant disabled were such evidence credited.

*Id*.  The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if

the case were remanded for further proceedings.  *Id*. at 1178

n.2.

On this record the Court concludes further proceedings are

necessary.  Because the ALJ did not properly assess Plaintiff's

RFC, the ALJ posed an inadequate hypothetical to the VE.  Thus,

the VE could not accurately testify as to whether Plaintiff could

perform work that exists in significant numbers in the national

economy.  The Court, therefore, concludes a remand for further

proceedings consistent with this Opinion and Order is required to

permit the ALJ to:  (1) reassess Plaintiff's RFC taking into

account the limitations of her intellectual functioning as

assessed by Dr. Goldstein and (2) take new testimony from the VE

regarding whether any jobs exist in significant numbers in the

national economy that Plaintiff can perform in light of her RFC.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the

Commissioner and **REMANDS** this matter pursuant to sentence four of

21 - OPINION AND ORDER

42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 26th day of July, 2013.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

22 - OPINION AND ORDER